UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PARK OUTDOOR ADVERTISING OF NEW
YORK, INC.,

                   Plaintiff,

   -v-                                  5:08-CV-186

THE TOWN OF ONONDAGA, NEW YORK,

                   Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                 OF COUNSEL:

THE WLADIS LAW FIRM, P.C.             KEVIN C. MURPHY, ESQ.
Attorneys for Plaintiff
PO Box 245
5795 Widewaters Parkway
Syracuse, NY 13214

LIPPMAN O'CONNOR                     GERARD E. O'CONNOR, ESQ.
Attorneys for Defendant
300 Olympic Towers
300 Pearl Street
Buffalo, NY 14202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

Plaintiff Park Outdoor Advertising of New York, Inc. ("plaintiff" or "Park") filed this action pursuant to 42 U.S.C. § 1983, alleging that defendant The Town of Onondaga, New York ("defendant" or "the Town") violated its right to freedom of speech under the First and

Fourteenth Amendments to the United States Constitution. The defendant denies the material allegations of the Complaint.

Both plaintiff and defendant moved for summary judgment. Each opposed the other's motion, and each replied in further support. Oral argument was heard on May 9, 2009, in Utica, New York. Decision was reserved.

## II. FACTS

The following facts are undisputed.

In April 2006 Park, along with the New York, Susquehanna and Western Railway Corporation ("NYS&W"), submitted an application for a use variance to the Town's Zoning Board of Appeals ("Zoning Board"). By its application for a use variance plaintiff sought permission to erect three single-pole two-faced advertising signs on a certain parcel within the Town. The sign faces would have been fourteen feet by forty-eight feet, with a total height of forty-five feet. This type of sign is commonly known as a billboard. The parcel upon which Park sought to erect the signs was leased by the NYS&W from the Onondaga County Industrial Development Agency ("IDA"). The IDA consented to the use variance. Park entered into a lease agreement with NYS&W related to erecting billboards on the parcel, but the lease payments did not begin until the signs were actually erected.

The only development on the parcel, which is zoned light industrial, is a sporadically-used railroad spur. The parcel, which is adjacent to Interstate 481, is long and narrow, and covered by scrub vegetation. There is a trash burning plant to one side of the parcel, and a quarry or cement plant on the other side of the road. There is some warehousing nearby, but no residential properties. Additionally, the would-be site for plaintiff's billboards is at the far end of the Town.

At the time Park submitted its application for a use variance, Town of Onondaga Local Law ("L.L.") 1-1994 § 33 governed the requirements for sign height, face size, and setback within the Town. The approach of L.L. 1-1994 was permissive; that is, it permitted on-premises signs of certain types. However, it did not specifically address billboards or other off-premises signs, therefore it did not permit them. Hence, after consultation with a Town zoning officer, plaintiff determined it would first apply for a use variance, and, if successful, follow with an application for area (size) and setback variances as necessary.

At some point, plaintiff's application was forwarded to the Onondaga County Planning Board ("County Board") for review. On April 25, 2006, the County Board recommended disapproval of the variance. Its stated reasons were that permitting plaintiff's signs would alter the character of the Interstate corridor and the relatively undeveloped character of the Ram's Gulch area. An additional stated reason was that granting the variance would undermine the integrity of the zoning ordinance, because the Town could rezone the area to permit the proposed use. Further, the County Board recommended that the Town establish billboard sign regulations.

On May 16, 2006, the Zoning Board denied Park's variance request. The resolution stated that plaintiff failed to put forth competent financial evidence to support its claim of unnecessary hardship as required by L.L. § 35-37 to justify a variance. The resolution also stated that allowing the variance would alter the essential character of the neighborhood, pose visual pollution to the area, and encroach on neighboring properties. Further, the resolution stated that the requested variation from the sign ordinance was substantial and the proposed use would pose health and safety concerns to the public and

adjacent property owners. Zoning Board members unanimously voted in favor of the resolution denying plaintiff's variance.

On August 7, 2006, after a public hearing, the Town Board enacted a Local Law, 2-2006, imposing a moratorium on off-premises billboard signs for a six-month period during which a review of regulations would be conducted. The moratorium was extended at least once.

The Town Board appointed a committee to undertake a review of whether to allow billboards. The committee consisted of a Town Board member, a Planning Board member, a Zoning Board member, and the Town Attorney. The committee chair was Suzanne W. Belle ("Belle"), a member of the Town Board. After at least two committee meetings, discussions among the committee members, and each member having gone to the site where Park proposed to erect billboards, there was a consensus that billboards should not be permitted in the Town. (O'Connor Aff. Ex. 11, Belle Dep. at 8-19, Doc. No. 11-15.) However, the Town Attorney advised that the Town must allow billboards in some areas. Id. at 20-21. Therefore, the committee drafted a proposed local law that permitted billboards, with significant restrictions. Id. at 22-24. There was dissension on the Town Board regarding the proposed law, and the committee then drafted another proposal that prohibited billboards and off-premises signs throughout the Town. Id. at 24-25.

On October 1, 2007, the Town Board enacted L.L. 8-2007, amending section 33 of L.L. 1-1994 to expressly prohibit billboards and off-site signs. Id. Ex. 10, L.L. 8-2007, Doc. No. 11-14 (hereinafter "L.L. 8-2007"). Local Law 8-2007 provided as follows:

> Off-site signs and billboards. In consideration of goals to protect and enhance property values and neighborhood character; protect public and private investment in buildings and open spaces; preserve and improve

>   the appearance of the Town as a place to live and work and as an aid to visitors; protect and enhance the scenic and natural beauty of the Town of Onondaga; encourage sound signing practices to identify business, institutions and facilities; reduce distractions to motorists and pedestrians and protect the public health, safety and general welfare, and specifically recognizing the adverse impact of the herein prohibited signage on the preservation of the appearance of the Town of Onondaga and the potential for distractions to motorists and pedestrians, in addition to any other signs which may be otherwise regulated or prohibited by this Code, the following signs are prohibited: (1) off-site signs; and (2) billboards.

Id.

The new law also contained a "Neutrality Provision" stating "Nothing in this law will prevent the substitution of any otherwise lawful non-commercial copy for any commercial copy on any sign which would be permitted under this section." Id. In other words, non-commercial messages on signs are only permitted where a commercial sign is permitted under the Local Law.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586, 106 S. Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

## IV. DISCUSSION

### A. Standing

The first issue for determination is the threshold question of whether Park has standing. The burden of establishing the three elements required to demonstrate standing is upon the party invoking federal jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992). The first element, suffering of an "injury in fact" requires a showing that a legally protected concrete and particularized interest was invaded. Id. at 560, 112 S. Ct. at 2136. The injury must be "actual or imminent, not conjectural or hypothetical." Id. (internal quotations omitted). The second element is causation: "there must be a causal connection between the injury and the conduct complained of--the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id. (internal quotations omitted). The third element requires that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (internal quotations omitted). To withstand a summary judgment motion based upon standing, the plaintiff must set forth

specific facts, taken as true for the purposes of the motion, to establish each required element. Id. at 561, 112 S. Ct. at 2137 (internal quotations omitted).

The Town argues that Park cannot establish any of the three elements required to demonstrate it has standing. It is undisputed that Park entered into a lease agreement with NYS&W under which Park would erect billboards, from which it would derive earnings from advertisers. Although it is not required to make payments to NYS&W under the lease until the signs are erected, so long as erecting the billboards is prohibited Park suffers an injury in the form of lost earnings. It is also noted that NYS&W also suffers an injury in the form of lost revenues from Park.

Second, Park's injury is traceable to the challenged ordinances. If the 1994 ordinance had permitted billboards, or if the amended ordinance did not prohibit billboards, plaintiff would not have needed to even apply for a variance. Without the lack of permission of the first and the prohibition of the second ordinances, Park would not have suffered injury.

Finally, if the ordinance provisions prohibiting billboards are stricken, plaintiff would be able to erect its signs and collect the revenue from advertisers, thus redressing the injury it now suffers. Thus, Park has standing to challenge both the previous ordinance, L.L. 1-1994, which by omission did not permit billboards, and the new ordinance, L.L. 8-2007, which expressly forbids billboards.

### B. Constitutionality

Commercial speech, if lawful and not misleading, is protected "from unwarranted governmental regulation" by the First Amendment. Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 561, 564, 100 S. Ct. 2343, 2349-50 (1980). In order to pass constitutional muster, restrictions upon commercial speech must be narrowly

drawn to "directly advance the state interest involved." Id. at 564, 100 S. Ct. at 2350. Thus, the constitutionality of a particular restriction on commercial speech is analyzed following a four part inquiry. First, the speech must be lawful and not misleading in order to fall within the protection of the First Amendment. Second, the "asserted governmental interest [must be] substantial." If it is determined that the speech is protected and the government interest is substantial, then the regulation is constitutional if it "directly advances the governmental interest asserted" and "is not more extensive than is necessary to serve that interest." Id. at 566, 100 S. Ct. at 2351.

Park's proposed speech was not unlawful or misleading, and therefore it is entitled to First Amendment protection under Central Hudson. Id. at 564, 100 S. Ct. at 2350. Local Law 1-1994 § 33 had no stated purpose of a substantial governmental interest to justify its restrictions on commercial speech. See Nat'l Advertising Co. v. Town of Babylon, 900 F.2d 551, 555-56 (2d Cir. 1990) (finding commercial speech restriction unconstitutional where there was no statement of substantial government interest and no extrinsic evidence of such interest). Further, in industrial districts it permitted only identification signs, that is, one wall-mounted sign, one ground identification sign, traffic directional signs (as determined by the Town Board), and one temporary sign. L.L. 1-1994 § 33 A(3), E(2). The regulation required a proposal to be submitted to the Town Board, and that "location, dimensions, composition and other features of signs shall be determined by the Town Board upon its review of the proposal and its considerations of the proposed use of the premises." Id. § 33 E(2)(a)-(c). No governmental interest was asserted in the ordinance, and there was no proffered evidence of any governmental interest taken into account in adopting L. L. 1-1994. Moreover, the ordinance cannot be said to be narrowly tailored when all signage on

industrial-zoned parcels is purely at the discretion of the Town Board. See id. Accordingly, L.L. 1-1994 § 33 was an unconstitutional restriction on commercial speech.

The Town attempted to cure the constitutional infirmity of L.L. 1-1994 with its 2007 amendment. As a proffered substantial governmental interest it stated that the purpose of the amendment prohibiting off-site signs and billboards was

> to protect and enhance property values and neighborhood character; protect public and private investment in buildings and open spaces; preserve and improve the appearance of the Town as a place to live and work and as an aid to visitors; protect and enhance the scenic and natural beauty of the Town of Onondaga; encourage sound signing practices to identify business, institutions and facilities; reduce distractions to motorists and pedestrians and protect the public health, safety and general welfare, and specifically recognizing the adverse impact of the herein prohibited signage on the preservation of the appearance of the Town of Onondaga and the potential for distractions to motorists and pedestrians.

L.L. 8-2007 § 1(I).

In addition, to avoid the pitfall of discriminating against noncommercial speech in favor of commercial speech, the Town added a "Neutrality Provision." See Town of Babylon, 900 F.2d at 556-57 (explaining how towns attempted to avoid having their sign ordinances struck down for such discrimination against noncommercial speech in light of Metromedia v. City of San Diego, 453 U.S. 490, 507, 101 S. Ct. 2882, 2892 (1981), by adding a neutrality provision). Defendant included this provision in its 2007 amendment: "Nothing in this law will prevent the substitution of any otherwise lawful non-commercial copy for any commercial copy on any sign which would be permitted under this section." Id. § 3(J).

Again following the Central Hudson four-part analysis, there is no allegation that plaintiff's proposed speech is unlawful or misleading, and therefore it is entitled to First Amendment protection. The Town has identified substantial governmental interests in

protecting property values, investment, aesthetics, and safety in reducing distractions to motorists and pedestrians.  However, prohibiting all off-site signs and billboards, throughout the Town, with no consideration for the area or its zoned uses is not "narrowly drawn" to protect the broad interests of the defendant in preserving property values, maintaining aesthetics, and promoting health and safety by reducing distractions to those driving and walking by.  That the ordinance is not narrowly tailored is especially demonstrated by consideration of the parcel at interest here: it is located at a far edge of the Town; zoned light industrial; in proximity to a quarry, trash-burning plant, and warehousing; away from any residential properties; holds a little-used railroad spur; and is covered in scrub vegetation.  Given this undisputed description of the property where Park proposed to erect off-premises signs, although it is arguable that a billboard prohibition may serve to reduce distractions to drivers due to its proximity to an interstate highway (although there is no evidence, such as a study, as to this), it cannot be said that prohibiting all off-premises signs in any way would "protect and enhance property values and neighborhood character;" or "protect public and private investment in buildings and open spaces;" or "preserve and improve the appearance of the Town as a place to live and work" or provide "aid to visitors;" or "protect and enhance the scenic and natural beauty of the Town" or reduce distractions to pedestrians; or, finally, to generally "protect the public health, safety and general welfare."  The only conclusion that can be reached is that L.L. 8-2007 is not narrowly drawn to directly advance the defendant's asserted interests, and, therefore, it is unconstitutional.

### C. Severability

The Town argues[1] that if the off-premises and billboard prohibitions are found unconstitutional, they may be severed from the remainder of the ordinance to save its remaining provisions, such as face size, height, and set back requirements. However, defendant does not assert that there is a severability clause in L.L. 1-1994 as amended by 8-2007.

Where there is no severability clause, "the burden is on the town[] to show that the unconstitutional provisions are severable." Town of Babylon, 900 F.2d at 557. If the constitutional and unconstitutional provisions are "inextricably interwoven" the entire ordinances will be struck down. Id.

In its severability argument the Town merely recites that if the "on-premises" aspect of the sign requirements are found unconstitutional, its face size, height, and set back requirements are severable from the on-premises portion of the ordinance and therefore enforceable. This argument does not address the finding that a complete prohibition on off-premises and billboard signs throughout the Town is unconstitutional. Moreover, as noted above, section 33 does not contain any face size, height, and set back requirements for signs in districts zoned industrial, such as the NYS&W property on which Park wishes to erect billboards. Rather, the ordinance provides that location, dimensions, composition and other features of signs are determined by the Town Board. L.L. 1-1994 § 33 E(2)(c).

---

[1] Defendant also argues that any challenge of the ordinance that requires only "on premises" advertising is moot because plaintiff's variance request was denied before L.L. 8-2007 was promulgated. Local Law 8-2007's specific prohibition on billboards is challenged by plaintiff. Therefore, defendant's mootness argument fails.

- 11 -

Accordingly, defendant's argument is insufficient to carry its burden of establishing that the unconstitutional provisions of its ordinance are severable.

## V. CONCLUSION

Park has standing to bring this constitutional challenge. The complete prohibitions on billboards and off-premises signs found in Local Law 1-1994, and as amended by 8-2007, are unconstitutional. Defendant has not meet its burden of establishing that the unconstitutional provisions are severable. Thus, the entirety of section 33 is unconstitutional.

Accordingly it is

ORDERED that

1. Defendant Town of Onondaga's motion for summary judgment is DENIED;

2. Plaintiff Park Outdoor Advertising of New York, Inc.'s motion for summary judgment is GRANTED;

3. The Town of Onondaga Zoning Ordinance, Local Law 1-1994, and as amended by 8-2007, are unconstitutional in their entirety and section 33 is STRICKEN in its entirety; and

4. The Town of Onondaga is ENJOINED from taking any action to enforce section 33 of the Town of Onondaga Zoning Ordinance.

IT IS SO ORDERED.

_____
United States District Judge

Dated: April 28, 2010
　　　　Utica, New York.